UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| BOBBY GRIGSBY,<br><br>        Plaintiff,<br><br>        v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of the Social<br>Security Administration,<br><br>        Defendant. | Case No. EDCV 08-1413 AJW<br><br>MEMORANDUM OF DECISION |

Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for disability insurance benefits and supplemental security income ("SSI") benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

The procedural facts are summarized in the joint stipulation. Plaintiff alleged that he became disabled on July 15, 2005, due to depressive disorder, post-traumatic stress disorder, and polysubstance abuse.[JS 2]. In a written hearing decision that constitutes the Commissioner's final decision in this matter, an administrative law judge ("ALJ") found that plaintiff had those three mental impairments, they were severe, and they met sections 12.04 and 12.09 of the Listing of Impairments (the "listing"). [AR 12-13]. The ALJ further found that if plaintiff stopped using drugs and alcohol, plaintiff would continue to have severe

mental impairments, but he would retain the residual functional capacity ("RFC") to perform work at any exertional level. His mental impairment would preclude work involving the following: more than moderate stress from others, fast paced work, high production quotas, safety operations, dangerous equipment, heights, hypervigilance, and public contact. The claimant has a 10th grade education and can read and write simple words. He is limited to simple repetitive tasks involving two steps of instructions. [AR 14].

The ALJ found that plaintiff's RFC without drug or alcohol used precluded him from performing his past relevant work. Based on the testimony of a vocational expert, the ALJ concluded that plaintiff's RFC would not preclude him from performing the alternative jobs of linen room attendant, hand packer, and hospital cleaner. Therefore, the ALJ concluded that plaintiff would not be disabled if he stopped using drugs and alcohol. [AR 19-20].

**Standard of Review**

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Stout v. Comm'r, Social Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)(internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Social Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir.1999)).

**Discussion**

**Alternative jobs**

Plaintiff contends that the jobs of linen room attendant, hand packer, and hospital cleaner are not

1  consistent with the RFC finding made by the ALJ. [See JS 3-11]. Specifically, plaintiff contends that the
2  Dictionary of Occupational Titles ("DOT") assigns those jobs a "Reasoning Development" level of 2 (or
3  3 for the job of linen room attendant), putting those jobs beyond plaintiff's RFC as formulated by the ALJ.
4  [See AR 14].

5      DOT job descriptions include a "General Educational Development" ("GED") definition
6  component, which "embraces those aspects of education (formal and informal) which are required of the
7  worker for satisfactory job performance." The GED component is comprised of three discrete scales:
8  "Reasoning Development," "Math Development," and "Language Development." The GED reasoning,
9  math, and language development scales range from Level 1 (low) to Level 6 (high). Levels 1 through 3 are
10  defined as follows:

11      LEVEL 1
12      Apply commonsense understanding to carry out *simple one- or two-step instruc-*
13      *tions*. Deal with standardized situations with occasional or no variables in or
14      from these situations encountered on the job.
15      LEVEL 2
16      Apply commonsense understanding to carry out *detailed but uninvolved written or*
17      *oral instructions*. Deal with problems involving a few concrete variables in or
18      from standardized situations.
19      LEVEL 3
20      Apply commonsense understanding to carry out instructions furnished in written,
21      oral, or diagrammatic form. Deal with problems involving several concrete
22      variables in or from standardized situations.
23  DOT, Appendix C (italics added).

24      The DOT classifies the jobs of hand packager (DOT job number 920.587-018) and hospital cleaner
25  (DOT job number 323.687-010) as requiring Level 2 reasoning. The job of linen room attendant (DOT job
26  number 222.387-030) requires Level 3 reasoning. Plaintiff argues that jobs requiring Level 2 reasoning (or
27  greater) exceed plaintiff's RFC as found by the ALJ. Plaintiff's argument has merit.
28      The ALJ explicitly found that without drug or alcohol use, plaintiff had severe mental impairments

limiting him to "simple repetitive tasks *involving two steps of instructions*." [AR 14]. The ALJ's RFC finding is clear and unambiguous. It corresponds to the DOT definition of Level 1 reasoning.

Defendant contends that someone who can perform "simple and repetitive work" is not precluded from all Level 2 reasoning jobs, and therefore plaintiff can perform the Level 2 reasoning jobs identified by the vocational expert. [JS 8]. That argument misses the mark. Level 2 reasoning jobs may be simple, but they are not limited to *one- or two-step instructions*. The restriction to jobs involving no more than two-step instructions is what distinguishes Level 1 reasoning from Level 2 reasoning. There is no legal or factual basis for ignoring the ALJ's express finding that plaintiff is limited to jobs involving only "two steps of instructions," or for elliding the difference between the DOT's definitions of Level 1 reasoning and Level 2 reasoning. Therefore, defendant's argument is rejected.

Defendant also argues that even if the vocational expert's testimony is inconsistent with the DOT, "the record contains persuasive evidence to support the deviation." [JS 8 (citing Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995))]. In substance, defendant argues that the record contains evidence in the record that could support a finding that plaintiff could perform Level 2 reasoning jobs. That argument is misguided.

"The DOT creates a rebuttable presumption as to the job classification. To deviate from the DOT classification, an ALJ 'may rely on expert testimony which contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation.'" Tommasetti v. Astrue, 533 F.3d 1035, 1042 (9th Cir. 2008)(citing Johnson, 60 F.3d at 1435). "[T]he ALJ must first determine whether a conflict exists. If it does, the ALJ must then determine whether the vocational expert's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the Dictionary of Occupational Titles." Massachi v. Astrue, 486 F.3d 1149, 1153 (9th Cir. 2007)(citing SSR 00-4p). Reasonable grounds for deviating from the DOT may exist where, for example, the DOT does not provide information about a specific occupation or subcategory, information about a particular job not listed in the DOT is available elsewhere, or the general description in the DOT does not apply in a specific situation. Massachi, 486 F.3d at 1153 n. 17.

The ALJ posed a hypothetical question to the vocational expert involving a person who, among other things, was "limited to simple, repetitive tasks, with just two steps of instructions." [AR 69]. The vocational

expert testified that the hypothetical person could perform the "medium SVP 2 level"[1] jobs listed in the DOT of linen room attendant, hand packer, and hospital cleaner. [AR 48]. She did not discuss the GED or reasoning development levels of those jobs. Asked by the ALJ whether her testimony was consistent with the DOT, the vocational expert said that it was. As explained above, however, a conflict exists between her testimony that a person with the limitations described by the ALJ could perform those three jobs and the job classification in the DOT, which states that those jobs require at least Level 2 reasoning. Because the vocational expert did not acknowledge the conflict between her testimony and the DOT, neither she nor the ALJ attempted to explain or justify it. Cf. Tommasetti, 533 F.3d at 1042 (holding that the ALJ erred at step four because he "did not identify what aspect of the VE's experience warranted deviation from the DOT, and did not point to any evidence in the record than the VE's sparse testimony" to support the deviation).

Defendant cannot remedy this legal defect in the ALJ's decision by citing evidence that could support a less restrictive RFC finding than the one the ALJ actually made. Therefore, the ALJ erred in finding that plaintiff can perform the jobs of linen room attendant, hand packer, and hospital cleaner.

**Treating psychiatrist**

Plaintiff also contends that the ALJ did not properly evaluate the opinion of treating psychiatrist Sean Faire, M.D. [JS 11-16].

Dr. Faire of the San Bernardino County Department of Behavioral Health ("County Behavioral Health") first saw plaintiff in March 2007, shortly after his release from jail. [AR 246-247]. Plaintiff told Dr. Faire that he had a history of depression, anger, and assaultive behavior. [AR 246]. He had shot himself in the head at age 14 (playing a game of Russian roulette). [AR 25, 246]. He reported that he had been in and out of custody on assault and drug charges. Plaintiff said that had first been prescribed Seroquel and Zoloft (sertaline) while in jail, about eight months earlier. He told Dr. Faire that he wanted to continue on those medications, which "greatly [decreased] depression & anger & prevent his [auditory hallucinations] of past (voices [with] commands to hurt people)." [AR 246].

---

[1] "SVP" is an abbreviation for "Specific Vocational Preparation," which "is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." DOT, Appendix C. Unskilled work corresponds to an SVP of 1 or 2. SSR 00-4p, 2000 WL 1898704, at *3

Dr. Faire diagnosed major depressive disorder, recurrent, severe with psychotic features. [AR 247]. He noted that plaintiff had a history of using marijuana, methamphetamine, and alcohol. Plaintiff correctly asserts that Dr. Faire did not give plaintiff a diagnosis of substance abuse during his initial evaluation. Subsequently, however, another County Behavioral Health treating psychiatrist diagnosed polysubstance abuse in remission [AR 240], which is consistent with the ALJ's finding that plaintiff had a substance abuse disorder prior to his incarceration. Therefore, the negative inference plaintiff seeks to draw from Dr. Faire's failure to make that diagnosis is unwarranted.

Dr. Faire gave plaintiff a Global Assessment of Function ("GAF") score of 50.[2] Dr. Faire did not assess plaintiff's mental functional limitations or opine that plaintiff was unable to work. [AR 246-247].

Dr. Faire continued plaintiff on Seroquel and sertaline. Later, he also prescribed trazodone, which is used to treat depression and anxiety. [AR 251-252]. Plaintiff returned for monthly or bi-monthly follow-up appointments with Dr. Faire or other County Behavioral Health doctors through the date of hearing in June 2008. [AR 28, 211-220, 235-252].

If contradicted by that of another doctor, a treating or examining source opinion may be rejected for specific and legitimate reasons that are based on substantial evidence in the record. Batson v. Comm'r of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); Tonapetyan v. Halter, 242 F.3d 1144, 1148-1149 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995). The ALJ met this standard with respect to Dr. Faire's diagnosis, which was different than other treating and nonexamining source diagnoses plaintiff received (including bipolar disorder, mood disorder, and depressive disorder).

Although he did not identify Dr. Faire by name, the ALJ discussed plaintiff's diagnosis and treatment reports. Substantial evidence supports the ALJ's conclusion that absent drug and alcohol use,

---

[2] The GAF score is a "multiaxial" assessment that reflects a clinician's subjective judgment of a patient's overall level of functioning by asking the clinician to rate two components: the severity of a patient's psychological *symptoms,* or the patient's psychological, social, and occupational *functioning*. The GAF score is the lower of the symptom severity score or the functioning severity score. A GAF score of 41-50 denotes serious symptoms, such as suicidal ideation or severe obsessional rituals, or any serious impairment in social, occupational, or school functioning, such as the absence of friends or the inability to keep a job. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition ("DSM-IV") Multiaxial Assessment, 27-36 (rev. 2000)) .

1  plaintiff has a depressive disorder and post-traumatic stress disorder that are not disabling. Plaintiff did not
2  have a treating source psychiatric diagnosis until he was evaluated in jail, where he received diagnoses of
3  bipolar disorder and mood disorder. [AR 16, 34]. He responded well to Depakote initially but later told his
4  jail doctors that it was not working, prompting them to substitute Zoloft and Seroquel. Plaintiff exhibited
5  increased depressive symptoms in September 2006 in response to a disparaging letter from his wife.
6  Otherwise, however, plaintiff generally did well on those medications for the remainder of his eight-month
7  term. He spent a lot of time working at an inmate job while in custody and liked it. [See AR 16-17, 181-
8  208].

   Soon after his release from jail, plaintiff began treatment at County Behavioral Health. The ALJ noted that "a staff psychiatrist"—Dr. Faire—conducted a mental status examination that was mostly normal except for auditory hallucinations, which, Dr. Faire added, were "very rare now."[3] [AR 17, 247]. The ALJ accurately observed that plaintiff said that his medication "greatly diminishes his depression and anger, and curtailed the auditory hallucinations." [AR 17]. The ALJ wrote that plaintiff reported "occasional bouts of sadness" while undergoing treatment at County Behavioral Health. However, plaintiff's condition for most of that time was "stable," and the exacerbation in his depressive symptoms appeared to be related to transient stressors, including "an episode of gastro-intestinal bleeding" in May 2007 and June 2007, and plaintiff's having been hit with a gun as the victim of a robbery in May 2008. Otherwise, plaintiff's progress notes indicated that he was "calm and lucid," did "not have debilitating depression," and said he "just deals with" his auditory hallucinations. [AR 17; see AR 237-250]. Those were specific, legitimate reasons for rejecting Dr. Faire's diagnosis. See Warre v. Comm'r of the Social Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2005)("Impairments that can be controlled effectively with medication are not disabling."); Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003) (holding that the ALJ permissibly rejected the contradicted opinion of a treating doctor whose "extensive conclusions regarding [the claimant's] limitations are not supported by his own treatment notes").

   The ALJ also said that he had considered plaintiff's GAF scores but declined to give them significant

---

[3] Dr. Faire's other mental status findings were as follows: plaintiff's appearance, hygiene, behavior, mood, affect, thought process, thought content, memory, and orientation were all within normal limits. Plaintiff's speech was soft, and his insight and judgment were fair. [AR 247].

weight. [AR 18]. He observed that some of those scores were provided by clinicians who are not acceptable medical sources. See 20 C.F.R. §§ 404.1513(a)&(d), 416.913(a)&(d)(defining an "acceptable medical source," and explaining that information from "other sources" also may be considered); Gomez v. Chater, 74 F.3d 967, 970-971 (9th Cir.) (holding that the regulations permit the Commissioner to give "less weight" to opinions from "other sources"), cert. denied, 519 U.S. 881 (1996). The ALJ also explained that a GAF score does not "speak directly to a claimant's work capacity." [AR 18-19]. That observation is borne out by Dr. Faire's examination report, which indicates that plaintiff's GAF score of 50 was based not only on his diagnosis of major depression, but also on plaintiff's "readjustment from jail - probation." [AR 247]. See Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000)(stating that the GAF scale "does not have a direct correlation to the severity requirements in our mental disorders listings"); Howard v. Comm'r of Social Sec., 276 F.3d 235, 241 (6th Cir. 2002) ("While a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy. Thus, the ALJ's failure to reference the GAF score in the RFC, standing alone, does not make the RFC inaccurate.") .

In finding that plaintiff had a severe depressive disorder and post-traumatic stress disorder when he did not use drugs or alcohol, the ALJ permissibly relied, in part, on the testimony of the medical expert, Dr. Rath. He summarized the treating source evidence on the record during the hearing and opined that plaintiff was "only greatly depressed for . . . a few months' period of time, when he was incarcerated in 2006, . . . and it shows improvement after he's medicated . . . . So there's not a year of [plaintiff] being even moderately depressed totally, in the records that I've reviewed." [AR 36].

Dr. Rath's testimony was consistent with plaintiff's treatment records, and therefore it is substantial evidence supporting the ALJ's finding with respect to the nature and severity of plaintiff's mental impairments. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996) (per curiam)("We have held that the findings of a nontreating, nonexamining physician can amount to substantial evidence, so long as other evidence in the record supports those findings."), cert. denied, 519 U.S. 1113 (1997).[4]

**Conclusion**

---

[4] This conclusion makes it unnecessary to consider plaintiff's contention that the ALJ posed an incomplete hypothetical question to the vocational expert. [See JS 16-19].

1   For the reasons described above, the Commissioner's decision is not free of legal error and is not supported by substantial evidence in the record as a whole. A remand for further administrative proceedings is appropriate because it is not clear that there are no alternative jobs that plaintiff can perform with the RFC assessed by the ALJ. See <u>Benecke v. Barnhart</u>, 379 F.3d 587, 595 (9th Cir. 2000)(holding that when a court reverses an administrative decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation" but that the district court erred in remanding for further administrative proceedings where the record, including the vocational expert's testimony, "clearly establishe[d] that [the claimant] cannot perform a sedentary job or any other substantial gainful work that exists in the national economy . . . .")(quoting <u>INS v. Ventura</u>, 537 U.S. 12, 16 (2002) (per curiam)); <u>see also</u> <u>Harman v. Apfel</u>, 211 F.3d 1172, 1178 (9th Cir.) (holding that the district court's decision whether to remand for further proceedings or payment of benefits is discretionary and is subject to review for abuse of discretion), <u>cert. denied</u>, 531 U.S. 1038 (2000).

Accordingly, the Commissioner's decision is reversed, and the case is remanded to the Commissioner for the <u>limited purpose</u> of allowing the ALJ to obtain additional vocational expert testimony and issue a new decision. The ALJ shall elicit testimony from the vocational expert as to whether (1) alternative jobs exist in significant numbers in the national economy for a person of plaintiff's age, education, and vocational background with the RFC assessed by the ALJ in his July 14, 2008 hearing decision [<u>see</u> AR 15]; and (2) the vocational expert's testimony is consistent with the <u>DOT</u> job classification information, including the Reasoning Development level, for any jobs identified by the vocational expert. If a conflict exists and the ALJ adopts the vocational expert's testimony, the ALJ must adduce persuasive evidence to support any deviation from the <u>DOT</u> and make appropriate written findings.

**IT IS SO ORDERED.**

DATED: January 22, 2010

_____
ANDREW J. WISTRICH
United States Magistrate Judge

9